# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSSACK FONSECA & CO., S.A., *et al.*,<br><br>　　　　Plaintiffs,<br>v.<br>NETFLIX INC.,<br>　　　　Defendant. | Case No.: CV 19-9330-CBM-AS(x)<br><br>**ORDER RE: DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT UNDER THE CALIFORNIA ANTI-SLAPP STATUTE [59]** |

The matter before the Court is Defendant Netflix, Inc.'s Special Motion to Strike Plaintiff's Second Amended Complaint Under the California Anti-SLAPP Statute (the "Motion"). (Dkt. No. 59.) The matter is fully briefed.

## I.　BACKGROUND

This action was filed on October 30, 2019 by Plaintiffs Mossack Fonseca & Co., S.A. ("MFSA"), Bufete Mf. & Co., Jurgen Mossack, and Ramon Fonseca (collectively, "Plaintiffs") arising from Netflix's film "The Laundromat" released in 2019. The Second Amended Complaint asserts the following causes of action: (1) libel; (2) libel *per se*; (3) false light privacy; (4) trademark dilution/tarnishment under 15 U.S.C. § 1125(c) as to MFSA; and (5) federal false advertising violation of 15 U.S.C. § 1125. (Dkt. No. 52.) Defendants' instant Motion requests that the Court strike Plaintiffs' state law claims for libel, libel *per se*, and false light (first,

second, and third causes of action) pursuant to California's anti-SLAPP statute.

## II. JURISDICTION

The SAC alleges this Court has subject matter jurisdiction over this matter based on diversity jurisdiction (28 U.S.C. § 1332) and federal question jurisdiction. (28 U.S.C. § 1331).

## III. LEGAL STANDARD

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). "The purpose of the anti-SLAPP statute is to deter lawsuits 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech.'" *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017) (citation omitted); *see also Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 315 (Cal. 2008). To prevail on an anti-SLAPP motion, a defendant "must establish that the challenged claim arises from [protected] activity." *Parrish v. Latham & Watkins*, 3 Cal. 5th 767, 774 (Cal. 2017) (citation omitted). If the defendant makes the required showing, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." *Id.* (internal quotations and citation omitted); *see also Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (Cal. 2002).

"In making its determination [on an anti-SLAPP motion], the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). As to the "second step" regarding Plaintiffs' burden, the Court's "inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *Baral v.*

*Schnitt*, 1 Cal. 5th 376, 384-85 (Cal. 2016). The plaintiff must meet its burden of proving a prima facie case "with admissible evidence." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001); *see also Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 6 Cal. 5th 931, 940 (2019) ("As to the second step inquiry" for an anti-SLAPP motion, "a plaintiff seeking to demonstrate the merit of the claim "may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence."). "If the plaintiff cannot meet the minimal burden of 'stat[ing] and substantiat[ing] a legally sufficient claim,' the claim is stricken pursuant to the [anti-SLAPP] statute." *Jordan-Benel*, 859 F.3d at 1188–89 (quoting *Navellier*, 29 Cal. 4th at 88).

## IV. EVIDENTIARY OBJECTIONS

Plaintiffs attached unauthenticated exhibits to their opposition to the Motion. (Dkt. No. 63-1, 63-2, Exhibits A and B.) Plaintiffs' Exhibit A appears to be various news articles from the internet reviewing the Film offered to demonstrate how Plaintiffs were "portrayed" in the Film. Plaintiffs' Exhibit B appears to be a description about Netflix and "The Laundromat" Film. Exhibit B includes the following description of the Film: "When a widow gets swindled out of insurance money, her search for answers leads to two cunning lawyers in Panama, who hide cash for the super rich." Plaintiffs use Exhibit B for the purpose of demonstrating Defendant and the Film created an "inescapable false impression that [Plaintiffs] are criminals involved in bribery, corruption, money laundering and/or other financial crimes."

The Court **SUSTAINS** Netflix's objections to Exhibit A and B (Dkt. No. 68) because they are not authenticated, no declaration laying foundation for the exhibits was filed, and they constitute inadmissible hearsay because Plaintiffs offer them for the truth of the matter asserted.[1]

---

[1] *See* Cal. Civ. Proc. Code § 425.16; *Metabolife Int'l, Inc.*, 264 F.3d at 840; *Sweetwater Union High Sch. Dist.*, 6 Cal. 5th at 940.

## V. DISCUSSION

Netflix's "The Laundromat" film is allegedly "based on" investigative journalist Jake Bernstein's book entitled *Secrecy World: Inside the Panama Papers Investigation of Illicit Money Networks and the Global Elite* which was published in 2017, which Plaintiffs allege defamed them (i.e., was libel and libel *per se*) and cast them in a "false light." (SAC ¶¶ 81, 86, 93, 113-20.) The Film "tells the story of the documents known as the Panama Papers . . . leaked in 2015," which "revealed how Panamanian law firm Mossack Fonseca illegally funneled money for the wealthy in Panama and worldwide." (SAC ¶ 132.)

### A. Protected Activity

To prevail on its anti-SLAPP motion, Netflix must first make a prima facie showing that Plaintiffs' state law claims arise from an "act . . . in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" is defined to include any of the following:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,

(3) any written or oral statement or writing made in a place open to the public or a ***public forum*** in connection with an issue of ***public interest***, or

(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of ***public interest***.

Cal. Civ. Proc. Code § 425.16(e) (emphasis added). Therefore, Netflix must first make a prima facie showing that the Film is "protected activity" that falls within one of the four subdivisions above. *Parrish*, 3 Cal. 5th at 774; *Jordan-Benel*, 859

F.3d at 1188. Here, Netflix argues the Film is protected activity under subdivisions (3) and (4) (public forum and public interest).

### (1) Public Forum

Netflix contends the Film is a "public forum" for purposes of protected activity under Cal. Civ. Proc. Code § 425.16(e). Plaintiffs do not dispute that the Film is a "public forum." Moreover, the SAC alleges that the Film's "expected release date to a general public audience in theatres was September 27, 2019 and thereafter, to millions of NETFLIX subscribers worldwide on or about October 18, 2019." (SAC ¶ 8.) Construing the anti-SLAPP statute broadly, the Court finds the Film was made in a public forum. *See* Cal. Civ. Proc. Code § 425.16(a); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039 (Cal. Ct. App. 2008); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 854 (2018), *review denied* (July 11, 2018), *cert. denied*, 139 S. Ct. 800 (2019).

### (2) Public Interest

Netflix argues the Film "covers both a 'public issue'" and "an issue of public interest," and therefore constitutes protected activity under subdivisions (3) and (4) because the Film addresses "significant public issues regarding the offshore industry, which was abused for financial and criminal wrongdoing on a worldwide level." Plaintiffs do not dispute that the Film was made "in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). Moreover, the SAC alleges the Panama Papers are "the **notorious** 11.5 million hacked documents imparted to a German reporter who enlisted the International Consortium of Investigative Journalist (ICIJ) to unleash the stolen data, worldwide, in articles and other media accounts of politicians, criminals, and other wealthy people using offshore companies to hide assets and launder money" (SAC ¶ 4 (emphasis added)); Plaintiffs were "well-known worldwide leader[s]" in the offshore "industry" for over 42 years, with representatives worldwide (*id.* at ¶¶ 32, 34, 42); Plaintiffs' "involvement in community affairs, industry enhancement,

charitable works, and government advisement, enhanced and elevated MFGROUP's reputation both locally and worldwide" (*id.* ¶ 40); and the Film "tells the story of the documents known as the Panama Papers . . . leaked in 2015," which "revealed how Panamanian law firm Mossack Fonseca illegally funneled money for the wealthy in Panama and worldwide" (*id.* ¶ 132). Accordingly, the Court finds the Film was made "in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e); *see Kronemyer v. Internet Movie Database Inc.*, 150 Cal. App. 4th 941, 949 (Cal. Ct. App. 2007).

\*   \*   \*

Because Netflix demonstrates the Film was made to a public forum "in connection with a public issue or an issue of public interest," Netflix meets its burden of making a prima facie showing that the Film is "protected activity" that falls within subdivisions (3) and (4) of Cal. Civ. Proc. Code § 425.16(e). *Parrish*, 3 Cal. 5th at 774.

**B.     Probability of Success**

Since Netflix satisfies its threshold burden of demonstrating the Film constitutes protected activity, the burden shifts to Plaintiffs to demonstrate a probability of success on their state law claims for libel, libel *per se*, and false light. *Parrish*, 3 Cal. 5th at 774.

The elements of a libel claim under California law are: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (Cal. Ct. App. 2010); *see also Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 723 (1989). Libel *per se* is "[a] libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a. Where, as here, "the communication involves a matter of public concern, the plaintiff does bear the burden of pleading and proving falsity" for a libel claim. *Murphy*, 4 Cal. App. 5th at 1156 (citations

omitted); *Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364, 375 (Cal. Ct. App. 1996).[2] When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 977 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir. 2020) (citations omitted).[3] Thus, to carry their burden on Defendant's anti-SLAPP Motion, Plaintiffs must demonstrate a reasonable probability that they can prove the Film includes assertions of fact that are false or create false impressions about Plaintiffs. *De Havilland*, 21 Cal. App. 5th at 865. "[M]ere assertions that a statement is 'false,' even in sworn declarations, do not satisfy a plaintiff's burden to demonstrate falsity." *Murphy*, 4 Cal. App. 5th at 1159 (citing *Vogel v. Felice*, 127 Cal. App. 4th 1006 (Cal. Ct. App. 6th Dist. 2005)).

Here, the SAC alleges the Film "portrays the Plaintiffs as ruthless uncaring lawyers who are involved in money laundering, tax evasion, bribery and/or other criminal conduct" and the Film "easily attribute[s] criminal and negative innuendo." (SAC ¶ 2.) Plaintiffs contend the Film "falsely implicates them in money laundering and other criminal activity related to offshore financial transactions" and gives "the inescapable false impression that MOSSACK and FONSECA are criminals involved in bribery, corruption, money laundering and/or other financial crime."

The Court finds no reasonable viewer of the Film would interpret the Film as conveying "assertions of objective fact," particularly given the statement at the beginning of the Film "BASED ON ACTUAL SECRETS" which sets the stage

---

[2] As discussed above, Plaintiffs do not dispute the Film was made in connection with a public issue or an issue of public interest.

[3] Plaintiffs agree the elements of their false light claim are the same as for their libel claim. *See also Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1082 (9th Cir. 2002) (to prevail on a false light claim, the plaintiff must show the defendant "disclosed to one or more persons information about or concerning [Plaintiffs] that was presented as factual but that was actually false or created a false impression about [them]").

and the disclaimer at the end of the Film that states the Film is fictionalized for dramatization and is not intended to reflect any actual person or history. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 512-513 (1991); *Partington v. Bugliosi*, 56 F.3d 1147, 1154-55 (9th Cir. 1995); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 871 (Cal. Ct. Appl. 2018); *Brodeur v. Atlas Entm't, Inc.*, 248 Cal. App. 4th 665, 680 (Cal. Ct. App. 2016); *Heller v. NBCUniversal, Inc.*, 2016 WL 6583048, at *7 (C.D. Cal. June 29, 2016).

Even assuming a reasonable viewer would view the Film as statements of actual fact, the Film does not portray Plaintiffs as directly involved in the murders, drug cartels, and other criminal activity committed by their clients as referenced in the Complaint.[4] The SAC alleges some of the offshore entities created by Plaintiffs "appears to have been utilized by some [end users] for criminal activity including, but not limited to, money laundering, tax evasion, bribery and/or fraud." (SAC ¶ 53.) Therefore, the Film's portrayal of persons for whom Plaintiffs created shell companies as engaging in criminal activity is not false. The Film also depicts Fonseca and Mossack being arrested after the Panama Papers were released, and states Plaintiffs were in jail for approximately 3 months. The SAC alleges criminal charges were brought against them in Panama, that there are "two current prosecutions" against them that "resulted in 'country arrest' and bail," and "both cases were precipitated by media accounts of 'Panama Papers' allegations." (*Id.* ¶ 9.) Accordingly, the Film's depiction of Plaintiffs' arrest is not false.

Therefore, the Court finds Plaintiffs fail to demonstrate a reasonable probability that the Film includes assertions of fact regarding Plaintiffs that are false or create false impressions regarding Plaintiffs.

---

[4] *See De Havilland*, 21 Cal. App. 5th at 871 ("[T]he right of publicity cannot, consistent with the First Amendment, be a right to control the celebrity's image by censoring disagreeable portrayals.").

**C. Discovery**

Because Plaintiffs fail to demonstrate a reasonable probability that they can prove falsity, the Court denies Plaintiff's request to conduct discovery regarding actual malice prior to the Court ruling on the Motion. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 853-54 (9th Cir. 2001) (Rymer, concurring) (noting the district court correctly granted the anti-SLAPP motion and dismissed the complaint with prejudice in defamation action, and properly denied the plaintiff's request for discovery on issues relating to actual malice upon determining discovery on malice was not necessary for it to decide whether the plaintiff established a prima facie case of falsity).[5]

## VI. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Special Motion to Strike Plaintiff's Second Amended Complaint Under the California Anti-SLAPP Statute based on Plaintiffs' failure to demonstrate a probability of success on their state law claims, and **STRIKES** Plaintiffs' claims for libel (first cause of action), libel *per se* (second cause of action) and false light (third cause of action).

**IT IS SO ORDERED.**

DATED: December 23, 2020.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[5] *See also Paterno v. Super. Ct.*, 163 Cal. App. 4th 1342, 1349 (Cal. Ct. App. 4th Dist. 2008); *Mitchell v. Super. Ct.*, 37 Cal. 3d 268, 283 (Cal. 1984).