UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MOSSACK FONSECA & CO., S.A., *et al.*, | Case No.: CV 19-9330-CBM-AS(x) |
|---|---|
| Plaintiffs, | **ORDER RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [60] [JS-6]** |
| v. | |
| NETFLIX INC., | |
| Defendant. | |

The matter before the Court is Defendant Netflix, Inc.'s ("Defendant's" or "Netflix's") Motion for Judgment on the Pleadings (the "Motion") as to Plaintiffs' federal claims for trademark dilution/tarnishment and false advertising. (Dkt. No. 60.)

## I. BACKGROUND

Plaintiff Mossack Fonseca & Co., S.A. ("MFSA"), Bufete MF & Co., Jurgen Mossack and Ramon Fonseca's (collectively, "Plaintiffs") Second Amended Complaint ("SAC") asserts the following five causes of action based on Netflix's film "The Laundromat": (1) libel; (2) libel *per se*; (3) false light privacy; (4) trademark dilution/tarnishment under 15 U.S.C. § 1125(c) as to MFSA; and (5) federal false advertising violation of 15 U.S.C. § 1125. (Dkt. No. 52.)

## II. LEGAL STANDARD

In ruling on a motion for judgment on the pleadings under Federal Rule of

Civil Procedure 12(c), the Court "inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party. *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020). The Court must also assume as true contents of documents incorporated by reference, and attached to the Complaint. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir. 2018); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court may also consider facts contained in materials properly the subject of judicial notice. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).[1]

### III. DISCUSSION

**A. False Advertising (Fifth Cause of Action)**

Plaintiffs' fifth cause of action is for false advertising under the Lanham Act, 15 U.S.C. § 1125 based on Netflix's alleged misrepresentation of its use of Plaintiffs' MOSSACK FONSECA Logo (hereinafter, the "MFSA Logo" or "Plaintiffs' mark") in the Film as "permissible use."[2] Defendant argues Plaintiffs' false advertising claim under the Lanham Act is barred by the First Amendment

---

[1] Plaintiffs argue Defendant "introduces extrinsic evidence in the form of facts and opinions interjected into its briefs" and if the Court "intends to consider any extrinsic evidence interjected by the Defendant," the Court must convert the Motion to a summary judgment motion and give Plaintiffs the opportunity to conduct discovery and present the Court with evidence to oppose the Motion. The Court has not considered any "extrinsic evidence" in ruling on the instant Motion. Accordingly, Defendant's Motion for Judgment on the Pleadings is not converted to a summary judgment motion.

[2] *See* SAC ¶¶ 184-85 (alleging Netflix "misrepresent[s] NETFLIX's use of MFSA's logo, as permissible use, authorized, licensed, assigned, sponsored and/or otherwise endorsed by [Plaintiffs], when in fact the same is patently false," and "NETFLIX's false and/or misleading statements misrepresent the nature, characteristics, and qualities of the Plaintiffs' products, services and/or commercial activities, and thereby deceived and are likely to continue to deceive the public in violation of 15 U.S.C. § 1125.").

under the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).

Under the *Rogers* test, "[a]n artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (applying *Rogers* test to the use of a trademark in the body of the work). There are two prongs to the *Rogers* test. The first prong requires that the defendant's use of the plaintiffs' trademark be relevant to the underlying work: "the level of relevance must merely be above zero." *Id.* at 1100. If the first prong is satisfied, the Lanham Act claim is still precluded unless the use explicitly misleads consumers about the source or content of the work. *Id.*; *see also Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 902 (9th Cir. 2002) (quoting *Rogers*, 875 F.2d at 999).

As to the first prong of the *Rogers* test, because the Film is about Plaintiffs and the Panama Papers, the Film's use of Plaintiffs' mark is relevant to the Film. *See MCA Records*, 296 F.3d at 902. With respect to the second prong, the Film's use of Plaintiffs' mark alone without Plaintiffs' authorization does not explicitly mislead consumers as to the source or content of the Film. *See Rock Star Videos,* 547 F.3d at 1100; *MCA Records*, 296 F.3d at 902. Plaintiffs cite to *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), in arguing that the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself. However, in *Gordon*, the Ninth Circuit emphasized:

> In the cases in which we have applied the *Rogers* test, the junior user has employed the mark in a different context—often in an entirely different market—than the senior user. In *MCA Records* and *Walking Mountain*, for example, Mattel's Barbie mark was used in a song and a series of photos. In *E.S.S.*, the mark of a strip club was used in a video game. And in *Twentieth Century Fox*, the mark of a record label was used in a television show. In each of these cases, the senior

3

> user and junior user used the mark in different ways. This disparate use of the mark was at most "only suggestive" of the product's source and therefore did not outweigh the junior user's First Amendment interests.

909 F.3d at 270. Here, Plaintiffs use their mark in the offshore shell company finance industry, whereas Defendant used Plaintiffs' mark in a film. *See id.* at 270 ("Nor would anyone 'think a company that owns one strip club in East Los Angeles . . . also produces a technologically sophisticated video game.'").[3]

Moreover, Plaintiffs' mark appears in several scenes in the body of the Film, and is therefore only one component of Defendant's larger expressive work. *See id.* at 270-71 (noting "in the cases extending *Rogers* to instances in which a mark was incorporated into the body of an expressive work, we made clear that the mark served as only one component of the larger expressive work," and "the concern that consumers will not be misled as to the source of [a] product is generally allayed when the mark is used as only one component of a junior user's larger expressive creation, such that the use of the mark at most implicitly suggest[s] that the product is associated with the mark's owner") (internal quotations and citation omitted). Accordingly, *Gordon* does not support Plaintiffs' contention that Defendants' "mere use of trademark alone" in the Film "makes such use explicitly misleading" for purposes of the second prong of the *Rogers* test.

Plaintiffs also argue there are false statements in Defendant's trailer for the Film to support their false advertising claim. A false advertising claim "requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a

---

[3] *Cf. Gordon*, 909 F.3d at 271 (whether defendants' use of plaintiff's mark on their greeting cards was "explicitly misleading as to [their] source" could not resolve as a matter of law where plaintiff also sold greeting cards and other merchandise with his mark and "consumers rely on marks on the inside of cards to identify their source").

substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829 (9th Cir. 2002).  Plaintiffs contend Defendant "portrays the Plaintiffs as criminals and/or in the false light of criminality in the provision of their services as overseas lawyers."  However, Plaintiffs fail to identify any false statement in the trailer for the Film.  Therefore, Plaintiffs fail to plead an essential element of their false advertisement claim with respect to the trailer for the Film. *Id.*; *see, e.g., Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013) (dismissing false advertising claim upon finding "Plaintiff fails to identify *any* false statement, much less explain why it is misleading").  Moreover, Defendants' use of Plaintiffs' logo in the trailer for the Film would be protected under the First Amendment pursuant to the *Rogers* test for the same reasons discussed above.  (*See* supra Section III.A.)

Therefore, the Court finds as a matter of law that Defendant's use of the mark in the Film and trailer for the Film is protected under the First Amendment based on the *Rogers* test, and therefore "is not actionable" under the Lanham Act. *See Rogers*, 875 F.2d at 1000; *Rock Star Videos*, 547 F.3d at 1099.  Accordingly, the Court grants Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' false advertising claim under the Lanham Act.

**B.     Trademark Dilution/Tarnishment (Fourth Cause of Action)**

Plaintiffs' fourth cause of action is for trademark dilution/tarnishment pursuant to 15 U.S.C. § 1125(c).  The SAC alleges Netflix's use of Plaintiffs' MFSA Logo[4] caused dilution by tarnishment by "diminish[ing] the present and

---

[4] The SAC alleges the Film and trailer for the Film used Plaintiffs' MFSA Logo "approximately 8 times."  (*See* SAC ¶ 123.)

5

1  future value of the logo in commerce." (SAC ¶ 176). Plaintiffs also assert
2  dilution by blurring by alleging the use of the MFSA Logo in the Film "is likely to
3  impair [the trademark's] distinctiveness by causing consumers to no longer
4  associate the logo solely and exclusively with [Plaintiffs]." (*Id.* ¶ 177.)
5  To state a claim for trademark dilution/tarnishment, Plaintiffs must allege: (1) the
6  mark is famous and distinctive; (2) Defendant is making use of the mark in
7  commerce; (3) Defendant's use began after the mark became famous; and (4)
8  Defendant's use of the mark is likely to cause dilution by blurring or dilution by
9  tarnishment. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).

10       Defendant argues its use of Plaintiffs' MFSA Logo falls within the
11 noncommercial use exception because the Film is protected free speech under the
12 First Amendment. 15 U.S.C. § 1125(c)(3)(C) provides that "[a]ny noncommercial
13 use of a mark" is not actionable as trademark dilution. "'Noncommercial use'
14 refers to a use that consists entirely of noncommercial, or fully constitutionally
15 protected, speech." *MCA Records*, 296 F.3d at 905. The Ninth Circuit has held
16 that noncommercial use "entitled to full First Amendment protection" includes
17 "speech [that] is not 'purely commercial'—that is, [speech that] does more than
18 propose a commercial transaction." *Id.* at 906.

19       As discussed above, the Court finds Defendant's use of Plaintiffs' mark had
20 some artistic relevance to the Film. Additionally, the SAC alleges "Netflix used
21 and continues to use [Plaintiffs'] logo for the sake of making its movie scenes true
22 to reality. . . ." (SAC ¶ 179.) Accordingly, Defendant's use of the mark was not
23 "purely commercial," and therefore is fully protected under the First Amendment
24 under the noncommercial use exception. *See MCA Records*, 296 F.3d at 902-03;
25 *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *8
26 (C.D. Cal. May 11, 2011); *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F.
27 Supp. 2d 1170, 1175 (C.D. Cal. 2009).

28       Plaintiffs do not dispute Defendants' use of the mark falls within the

6

noncommercial use exception, but instead argue Defendant did not raise the noncommercial use exception as an affirmative defense in its Answer to the SAC. However, Defendant pled in its third affirmative defense in its Answer to the SAC that "Plaintiffs' claims are barred because Defendant's speech is protected under the First Amendment." Because Defendant's noncommercial use exception defense raised in the instant Motion is based on Defendant's free speech protections under the First Amendment, Plaintiffs were put on notice of Defendant's noncommercial use defense for its dilution/tarnishment claim. *See MCA Records*, 296 F.3d at 906; *Roxbury Entm't*, 669 F. Supp. 2d at 1176.

Accordingly, the Court grants Defendant's Motion for Judgment On the Pleadings as to Plaintiffs' trademark dilution/tarnishment claim.[5]

## C. Leave to Amend

Plaintiffs request leave to amend to remedy "any insufficiency in pleadings recognized by this Court " that "is remediable by way of amendment." However, because the Court finds as a matter of law Plaintiffs' false advertising claim is protected under the First Amendment pursuant to the *Rogers* test and Plaintiffs' trademark dilution/tarnishment claim fails as a matter of law because Defendant's Film falls within the noncommercial speech exemption, leave to amend would be futile. Accordingly, the Court denies Plaintiffs' request for leave to amend.

## D. Attorneys' Fees and Costs

Defendant requests an award of attorneys' fees and costs incurred in making this Motion pursuant to 15 U.S.C. § 1117, which provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The Court denies Defendant's request for attorneys' fees and costs without

---

[5] Because Defendant's use of Plaintiffs' mark falls within the noncommercial speech exception, the Court does not rule on Defendant's alternative grounds for judgment on the pleadings on Plaintiffs' trademark dilution/tarnishment claim based on "nonactionable trademark use," whether there was prior harm to Plaintiffs' brand, reputation, and goodwill, and whether Plaintiffs' mark is famous.

prejudice as premature. To the extent Defendants seek attorneys' fees, Defendants must comply with this district's local rules regarding noticed motions, demonstrate why this is an exceptional case as required pursuant to 15 U.S.C. § 1117, and demonstrate the fees and costs sought are reasonable with supporting evidence.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' fourth and fifth causes of action for trademark dilution/tarnishment and false advertising.

**IT IS SO ORDERED.**

DATED: December 23, 2020.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE